# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| **YUSEN LOGISTICS (AMERICAS) INC.,** <br> 300 Lighting Way, 6th Floor <br> Secaucus, New Jersey 07094, <br><br> Plaintiff, <br><br> v. <br><br> **DMAX, LTD.,** <br> 3100 Dryden Road <br> Dayton, Ohio 45439, <br><br> and <br><br> **CARGO IN CONTAINERS FOR WAY BILL # STR0035042, # STR0034989, and # STR0034980**, which are located at: <br> Taylor Logistics, Inc. <br> 9756 International Blvd. <br> West Chester, Ohio 45246, *in rem*, <br><br> Defendants. | Civil Action No. 20-147 <br><br> JUDGE _____ <br><br> IN ADMIRALTY <br> PURSUANT TO RULE 9(H) <br><br> **VERIFIED COMPLAINT AND REQUEST FOR ISSUANCE OF WRIT OF ATTACHMENT OR ARREST OF TANGIBLE PROPERTY** |

Plaintiff Yusen Logistics (Americas) Inc. ("Yusen Americas"), by counsel, hereby brings its Verified Complaint against DMAX, Ltd. ("DMAX") and the Cargo in Containers For Way Bill # STR0035042, # STR0034989, and # STR0034980, *in rem* (collectively, "Defendants"), and in support thereof, states the following:

## PARTIES

1.  Yusen Americas is a corporation duly organized and existing pursuant to the laws of the State of New York with its office and principal place of business located at 300 Lighting Way, Secaucus, New Jersey 07094. Yusen Americas is engaged in the business of providing freight logistics services, including arranging and managing the transportation of goods for its

1

13045018 v3

clients. Among other things, Yusen Americas is a Non-Vessel Operating Common Carrier holding License No. 002432 issued by the Federal Maritime Commission.

2. DMAX is a privately held Ohio limited liability company, which is a joint venture owned by GM and Isuzu North America Corporation. DMAX's principal place of business is located at 3100 Dryden Road, Dayton, Ohio 45439, and DMAX regularly conducts business activities within the State of Ohio.

3. The cargo that is subject to this *in rem* action represents goods shipped to a warehouse owned by Taylor Logistics, Inc. ("Taylor"). Specifically, the cargo at issue constitutes goods for which storage and demurrage charges were incurred by Yusen Americas, but for which DMAX is liable. This cargo is comprised of all goods included in shipments identified by Way Bill #STR0035042, #STR0034989, and #STR0034980 (hereinafter, the "Cargo").

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action based on diversity of citizenship, pursuant to 28 USC §1332, and pursuant to 28 USC §1333 and Rule C of the Supplemental Rules for Admiralty or Maritime Claims of the Federal Rules of Civil Procedure. Pursuant to Rule C, a party who may proceed *in rem* may also, or in the alternative, proceed *in personam* against any person who may be liable. Yusen Americas designates this claim as an admiralty and maritime claim pursuant to Rule 9(h) of the Federal Rules of Civil Procedure.

5. The amount in controversy exceeds $75,000.00.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because the events and circumstances giving rise to the claims stated herein occurred within this district and within the district of the Court.

7. The Cargo is or will be located within the jurisdiction of the Court during the pendency of the litigation as the Cargo is currently being stored at Taylor's warehouse located at 9756 International Blvd., West Chester, Ohio 45246.

## FACTS COMMON TO ALL COUNTS

8. On or about February 14, 2017, Yusen Logistics (Deutschland) GmbH ("Yusen-Deutschland") entered into a written agreement with Neue Halberg-Guss GmbH ("Halberg Guss") with respect to the transportation of various shipments of goods from Hallberg Guss's location in Germany to DMAX in the United States via ocean and rail carriers.

9. Thereafter, Halberg Guss was acquired by an investor group, AVIR Gub Holding, and as part of the acquisition, Halberg Guss was renamed Gusswerke Saarbrucken GmbH ("Gusswerke"). Since that time, the goods were transported from the Gusswerke location in Germany to DMAX in the United States via ocean, rail, and motor carriers.

10. Yusen-Deutschland arranged for the transportation of goods by ocean via Hapag-Lloyd (America) LLC ("Hapag Lloyd") and rail via Norfolk Southern Corporation ("Norfolk Southern") and appointed Yusen Americas as its receiving agent in the United States.

11. The goods were to be shipped from Gusswerke's location in Saarbrucken, Germany to Taylor's warehouse in West Chester, Ohio via ocean, rail, and motor carriers.

12. After Taylor received the shipments, DMAX, was required to pick up the shipments from Taylor's warehouse and transport them to DMAX's facility.

13. The shipments represented a series of valid enforceable contracts memorialized by way bills issued by Yusen-Deutschland and Yusen Americas and reflecting the multi-modal transportation being arranged in exchange for payment.

14. Transportation of the goods to Ohio occurred without incident until problems arose late last year. Specifically, due to a strike by the United Auto Workers ("UAW") against

13045018 v3

GM, engine production was suspended at DMAX's plant in Moraine, Ohio and, upon information and belief, the strike caused a strain on resources at DMAX's facility in Dayton, Ohio.

15. As DMAX was utilizing its resources to end a debilitating strike by the UAW (which caused the Moraine, Ohio plant to shut down), DMAX was unable to send its usual supply of motor carriers to Taylor's warehouse to pick up the goods. As a result, since the goods could not be removed from the warehouse, no additional space was available at the warehouse to receive additional incoming goods.

16. Without the space to store the goods at the warehouse, certain goods remained at the ports and rail container yards and incurred storage and demurrage charges from Hapag-Lloyd and Norfolk Southern.

17. Specifically, the Cargo at issue in this action was contained in the shipments memorialized by Way Bill # STR0035042, # STR0034989, and # STR0034980 ("Way Bills") and was subject to storage and demurrage charges from Hapag-Lloyd and Norfolk Southern. A true and accurate copy of the Way Bills is collectively attached hereto as **Exhibit A**.

18. The accrual of storage and demurrage charges was further exacerbated by the fact that DMAX ordered larger quantities of goods than was customary between the parties, because DMAX sought to obtain as many of the goods as possible prior to the shutdown and closure of its supplier, Gusswerke, which ultimately filed for bankruptcy in Germany.

19. These extraordinarily large shipments caused a backlog at the rail container yards and ocean ports.

20. In short, the storage and demurrage charges for the Cargo were caused by DMAX's actions.

21. Further, Yusen Americas paid for the storage and demurrage charges in order to ensure the release of the Cargo and to prevent the charges from continuing to increase exponentially.

22. However, payment of storage and demurrage charges was not the responsibility of Yusen Americas or Yusen-Deutschland and instead was the responsibility of DMAX pursuant to the Way Bills and the Terms and Conditions relating to the Way Bills. The Terms and Conditions appear on the back of each Way Bill. A true and accurate copy of the Terms and Conditions is attached hereto as **Exhibit B**.

23. Pursuant to Section 22 of the Terms and Conditions, Yusen Americas "shall have a lien on the [Cargo], which shall survive delivery, for all . . . demurrage, storage . . . loss, charges, expenses, and any other sums whatsoever payable by or chargeable to or for the account of the [Consignee] under this [Way Bill] and any other contracts of carriage with the [Consignee] whatsoever, whether they may be relevant to this [Way Bill] or not, and the cost and expenses of recovering the same including attorneys' fees . . ."

24. The storage fees charged by Norfolk Southern relating to the Cargo totaled Two Hundred and Nine Thousand One Hundred Dollars ($209,100.00). A true and accurate copy of the invoices for storage fees from Norfolk Southern are attached hereto as **Exhibit C**.

25. The demurrage fees charged by Hapag-Lloyd relating to the Cargo totaled Two Hundred and Thirty-Three Thousand Eight Hundred and Eighty Dollars ($233,880.00). A true and accurate copy of the invoices for demurrage fees from Hapag-Lloyd are attached hereto as **Exhibit D**.

26. DMAX has failed to pay the storage and demurrage charges now owed to Yusen Americas.

27. Pursuant to the Way Bills and the Terms and Conditions, Yusen Americas has a lien upon the Cargo which is subject to the storage and demurrage charges.

28. The storage and demurrage charges paid by Yusen Americas totaled Four Hundred Forty-Two Thousand Nine Hundred and Eighty Dollars ($442,980.00).

29. Although Yusen Americas has demanded payment of the storage and demurrage charges by DMAX, DMAX has failed or refused to pay the money, or any part thereof, owed to Yusen Americas.

30. As such, Yusen Americas is entitled to judgment against DMAX in the amount of Four Hundred Forty-Two Thousand Nine Hundred and Eighty Dollars ($442,980.00) plus attorneys' fees, in a sum to be determined, plus costs.

## COUNT I - BREACH OF MARITIME CONTRACT

31. Yusen Americas incorporates herein by reference each and every paragraph set forth above as if fully rewritten below.

32. Yusen-Deutschland arranged for the transportation of various shipments of goods from Gusswerke's location in Germany to DMAX in the United States via ocean, rail, and motor carriers. The shipments at issue were part of a series of valid enforceable contracts memorialized by the Way Bills.

33. Yusen-Deutschland appointed Yusen Americas as its receiving agent in the United States and identified Yusen Americas as a "Carrier" under the Way Bills along with Yusen-Deutschland.

34. Pursuant to the Way Bills and the Terms and Conditions, Yusen Americas "shall have a lien on the [Cargo], which shall survive delivery, for all . . . demurrage, storage . . . loss, charges, expenses, and any other sums whatsoever payable by or chargeable to or for the account

of the [Consignee] under this [Way Bill] and any other contracts of carriage with the [Consignee] whatsoever, whether they may be relevant to this [Way Bill] or not, and the cost and expenses of recovering the same including attorneys' fees . . . ."

35. At all times relevant herein, Yusen-Deutschland and Yusen Americas fully and satisfactorily performed all of their obligations according to the terms of the Agreement and the Way Bills, and all conditions precedent to Yusen Americas' recovery of the outstanding amount have occurred.

36. Storage and demurrage charges were incurred for the Cargo which was to be sent from Gusswerke to DMAX via ocean and rail.

37. Yusen Americas paid the storage and demurrage charges in order to obtain release of the Cargo.

38. DMAX has failed to pay the storage and demurrage charges owed to Yusen Americas.

39. Pursuant to the Way Bills and the Terms and Conditions, Yusen Americas has a lien upon the Cargo which is subject to the storage and demurrage charges.

40. The storage and demurrage charges paid by Yusen Americas totaled Four Hundred Forty-Two Thousand Nine Hundred and Eighty Dollars ($442,980.00).

41. Although Yusen Americas has demanded that DMAX pay the storage and demurrage charges, DMAX has failed or refused to pay the money, or any part thereof, owed to Yusen Americas.

42. As such, Yusen Americas is entitled to judgment against DMAX in the sum of Four Hundred Forty-Two Thousand Nine Hundred and Eighty Dollars ($442,980.00) plus attorneys' fees, in a sum to be determined, plus costs.

## COUNT II - MARITIME ATTACHMENT OR ARREST OF CARGO

43. Yusen Americas incorporates herein by reference each and every paragraph set forth above as if fully rewritten below.

44. Storage and demurrage charges were incurred for the Cargo which was to be sent from Gusswerke to DMAX via ocean and rail.

45. Yusen Americas paid the storage and demurrage charges in order to obtain release of the Cargo.

46. DMAX has failed to pay the storage and demurrage charges owed to Yusen Americas.

47. Pursuant to the Way Bills and the Terms and Conditions, Yusen Americas has a lien upon the Cargo for the storage and demurrage charges.

48. As such, Yusen Americas is entitled to enforce its maritime lien on the Cargo and requests that the Court order the arrest of the Cargo, which is subject to the storage and demurrage charges which remain unpaid by DMAX.

## COUNT III - UNJUST ENRICHMENT / QUANTUM MERUIT

49. Yusen Americas incorporates herein by reference each and every paragraph set forth above as if fully rewritten below.

50. As set forth above, DMAX's actions caused the storage and demurrage charges to be incurred with respect to the Cargo.

51. Yusen Americas paid for the storage and demurrage charges in order to release the Cargo and limit the charges from exponentially increasing.

52. Payment of the storage and demurrage charges was not the responsibility of Yusen Americas, and instead, was the responsibility of DMAX pursuant to the Way Bills and the related Terms and Conditions.

53. Yusen Americas has conferred a benefit upon DMAX by paying for the storage and demurrage charges that were the responsibility of DMAX.

54. DMAX's receipt of the benefit of Yusen Americas' payment of the storage and demurrage charges without repaying Yusen Americas for the same is unjust and inequitable.

55. The storage and demurrage charges paid by Yusen Americas total Four Hundred Forty-Two Thousand Nine Hundred and Eighty Dollars ($442,980.00).

56. Although Yusen Americas has demanded payment of the storage and demurrage charges by DMAX, DMAX has failed or refused to pay the money, or any part thereof, owed to Yusen Americas.

57. As such, Yusen Americas is entitled to judgment against DMAX in the sum of Four Hundred Forty-Two Thousand Nine Hundred and Eighty Dollars ($442,980.00) plus attorneys' fees, in a sum to be determined, plus costs.

**RELIEF REQUESTED**

**WHEREFORE**, Yusen Americas, based upon the foregoing factual allegations and applicable legal theories, whether stated herein above or determined at a later time, and based upon the evidence presented at trial, respectfully prays for the following relief:

A. That summons and process issue against DMAX, Ltd. and that DMAX, Ltd. appear and answer, under oath, this Verified Complaint;

B. That summons and process issue against the Cargo in Containers for Way Bill # STR0035042, # STR0034989, and # STR0034980, and that all persons having a

claim and any interest therein be cited to appear and answer, under oath, as to their interests;

C. That to conserve the resources of the U.S. Marshal's Service and to effect service of process promptly and economically, since appointing a person over 18 years of age and who is not a party to this action will result in substantial economies in time and expense, that such a person be appointed pursuant to Fed. R. Civ. P. 4(c) to serve process in this action.

D. Judgment in a sum in excess of $442,980.00, which includes known charges for storage and demurrage, to date;

E. That Yusen Americas' maritime lien against the Cargo for the storage and demurrage charges sustained be recognized as a valid and sustaining preferred maritime lien against the Cargo;

F. Attorneys' fees, interest, and costs of suit;

G. Pre-judgment and post judgment interest to the maximum extent permitted by law; and

H. All other just and appropriate relief determined by the Court.

Respectfully submitted,

*/s/ Marc S. Blubaugh*
Marc S. Blubaugh (0068221)
Steven A. Oldham (0080876)
Benesch Friedlander Coplan & Aronoff, LLP
41 S. High Street, Suite 2600
Columbus, Ohio 43215-6164
Telephone: (614) 223-9300
Facsimile: (614) 223-9330
Email: mbluaugh@beneschlaw.com
soldham@beneschlaw.com

*Attorneys for Plaintiff*
*Yusen Logistics (Americas) Inc.*

13045018 v3

## **VERIFICATION**

STATE OF OHIO )
                                )
FRANKLIN COUNTY )

I, Marc S. Blubaugh, being duly sworn, deposes and says:

I am one of the attorneys in fact of Plaintiff Yusen Logistics (Americas) Inc. I have read the foregoing Verified Complaint and know the contents thereof to be true to the best of my knowledge, information and belief, based upon the documentation and information provided to me by the Plaintiff.

_____
Marc S. Blubaugh

Sworn to and subscribed before me on this 21 day of February, 2020.

_____
Notary Public

13045018 v3