# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

YUSEN LOGISTICS (AMERICAS) INC.,　　　　　　　　Case No. 1:20-cv-147

　　　　　Plaintiff,　　　　　　　　　　　　　　　　　　Dlott, J.
　　　　　　　　　　　　　　　　　　　　　　　　　　　　Bowman, M.J.
　　v.

DMAX, LTD., et al.,

　　　　　Defendants.

## MEMORANDUM OPINION AND ORDER

Plaintiff initiated this lawsuit on February 21, 2020, invoking both admiralty jurisdiction and diversity jurisdiction. (Doc. 1 at ¶4). At the same time, Plaintiff designated its claim as "an admiralty and maritime claim pursuant to Rule 9(h) of the Federal Rules of Civil Procedure." (*Id.*) As the Sixth Circuit has explained, whether a case proceeds under admiralty or diversity jurisdiction often has substantive as well as procedural implications for a case. *See Buccina v. Grimsby*, 889 F.3d, 256, 259 (6th Cir 2018). By invoking admiralty jurisdiction, Plaintiff seeks to take advantage of one of the unique provisions available under admiralty alone. Specifically, Plaintiff has moved for the "arrest of cargo" under Rule C(3) of the Supplemental Rules for Certain Admiralty and Maritime Claims. Based upon the unique facts alleged in this case, this Court is unable to grant the relief requested as yet. Rather than issue a Report and Recommendation denying

relief outright,[1] the undersigned will direct Plaintiff to further brief the issue through this order.[2]

## I. Facts Alleged in Complaint

The cargo for which Plaintiff seeks an arrest in rem has not been aboard a vessel in navigable waters for quite some time. According to the complaint, Plaintiff is engaged in "freight logistics services." (Doc. 1 at ¶1). Three years ago in 2017, Plaintiff's German affiliate, "Yusen-Deutschland," a non-party, entered into a contract with another nonparty (presumed to be the seller of the goods) to transport automotive parts from Germany to the U.S. "via ocean, rail and motor carriers" to the presumed buyer, Defendant DMAX. (Doc. 1 at ¶¶8, 9). Defendant DMAX is a joint venture owned by GM and Isuzu North America Corporation. (Doc. 1 at ¶2). After making shipping arrangements, Yusen-Deutschland appointed Plaintiff (Yusen Americas) as its receiving agent. (*Id.* at ¶10). The goods were transported via ocean, rail and motor carriers as agreed upon, and eventually were off-loaded into a warehouse located in West Chester, Ohio that is owned by Taylor Logistics, Inc., another non-party. (*Id.* at ¶11).

Once delivery to the warehouse was completed, however, "problems" arose "late last year." (Doc. 1 at ¶14). The complaint is somewhat vague as to the details, but sample

---

[1]The issuance of a warrant of arrest in rem appears to be a dispositive matter for which a Report and Recommendation would be required under 28 U.S.C. § 636(b).
[2]The undersigned is well aware of counsel's frequent calls to chambers to check on the status of its motion, and whether the Court requires any additional information from Plaintiff in order to rule on the pending motion. This order responds to that *ex parte* procedural question. Despite the sense of urgency conveyed by the daily or near-daily telephone calls, neither the original complaint nor the motion suggest that the cargo is in any danger. Aside from seeking first priority for a lien for its monetary damages, Plaintiff seeks only damages for storage and demurrage fees previously paid by Plaintiff, interest, and attorneys' fees.

"Way Bills" attached as exhibits to the complaint are dated November 2019, and "terms and conditions appear on the back of each Way Bill." (*See* Doc. 1-1, Exhibit B). The exemplary terms and conditions state that Japanese law applies and define "Merchant" in the broadest terms possible, not only to include the seller with whom Plaintiff contracted, but also to include "the Shipper, consignor, consignee, owner and receiver of the Goods, and the holder of this Bill and any other person acting on their behalf." (Doc. 1-1, Exh. B at ¶1(h) and ¶3). The Way Bills appear to be equivalent to Bills of Lading, which are essentially contracts for the transportation of goods. *See Norfolk Southern Railway Co. v. Kirby*, 543 U.S. 14, 18 (2004). On the Way Bills attached as exhibits, DMAX is listed as a "consignee." However, there is no other information concerning the nature of any relationship (explicit or implicit) between Plaintiff and Defendant DMAX.

Assuming that the Way Bills contractually apply to DMAX, Plaintiff points to Paragraph 22 as authority for its lien. That provision states, relevant part: "Carrier shall have a lien on the Goods, which shall survive delivery, for all freight, dead freight, demurrage, storage…and any other sums whatsoever payable by or chargeable to or for the account of the Merchant under this Bill and any other contracts of carriage with the Merchant whatsoever, whether they may be relevant to this Bill or not, and the cost and expenses of recovering the same including attorneys' fees…." (Doc. 1-1, Exh. B at ¶22).

Apparently after Yusen Americas accepted delivery of the goods at the West Chester warehouse, things began to go awry. Plaintiff alleges that DMAX failed to send its usual supply of motor carriers to pick up the goods. The delay resulted in mounting

3

storage and demurrage charges assessed against Plaintiff by the shipping and railway companies with whom Plaintiff had contracted. Plaintiff argues that the "extraordinarily large shipments caused a backlog at the rail container yards and ocean ports" and that all of the charges that were billed have been "caused by DMAX's actions." (*Id.* at ¶19-20). Exhibit C to the complaint suggests that the charges were billed by the carriers to Plaintiff as the "customer." Plaintiff alleges that it paid the bills "to ensure the release of the Cargo…and to prevent the charges from continuing to increase exponentially." (*Id.* at ¶21). However, Plaintiff argues that DMAX, the "consignee" that originally ordered the goods (and not Plaintiff or the seller who contracted with the freight carriers) should be held responsible for all charges pursuant to ¶22 of the "terms and conditions" in the Way Bills. Presumably in the alternative to the "breach of maritime contract" claim, Plaintiff seeks relief against DMAX for "unjust enrichment/quantum meruit."

## II. Jurisdictional Analysis

Admiralty jurisdiction, like all types of federal jurisdiction, is narrowly construed. The undersigned is unable to confirm that admiralty jurisdiction would exist on the facts presented, and/or that a warrant in rem under Rule C can be issued against the cargo owned by DMAX at the warehouse. At least some authority suggests that admiralty jurisdiction over Plaintiff's claims against DMAX may not exist and/or that a warrant in rem may not be permissible on these facts. "[W]ether [admiralty] jurisdiction exists is a question anterior to, although often coincident with, the question of whether the plaintiff has a maritime lien." *Wilkins v. Commercial Inv. Trust Corp.*, 153 F.3d 1273, 1276 (11th

4

Cir. 1998). "The boundaries of admiralty jurisdiction over contracts ... have always been difficult to draw." *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. at 23. "Generally, admiralty jurisdiction extends only to wholly maritime contracts." *Cary Marine, Inc. v. Motorvessel Papillon*, 872 F.2d 751, 754 (6th Cir. 1989).

The Supreme Court in *Kirby* recognized the realities of the modern shipping business including that an accident that occurred when a freight train derailed still sounded in admiralty law. However, *Kirby* involved litigation between the contracting seller and downstream freight companies hired by a "freight forwarding company" that held a position similar to Plaintiff in this case. *Kirby*, 543 U.S. at 18. Here, the fact that Defendant as the buyer contracted to purchase goods from a German seller, which in turn contracted with Plaintiff to ship the goods, does not necessarily mean that Plaintiff may sue DMAX for breach of a "maritime contract." It is the nature of the contract that controls. In *Barna Conshipping, S.L. v. 1,800 Metric Tons, more or less, of Abandoned Steel*, 2009 WL 1203923 (S.D. Ala. April 29, 2009), a district court held that a contract for the purchase and delivery of goods from Spain was not a maritime contract, and that the plaintiff could not obtain a maritime lien for demurrage charges despite the fact that the purchaser was listed as a "consignee" on the bill of lading.

Of course, as Plaintiff itself recognizes with its claim of unjust enrichment and assertion of diversity jurisdiction, a lack of maritime jurisdiction would not so much doom its claim as limit its remedies. Thus, even if this Court lacks jurisdiction to issue the

5

requested warrant under maritime law, Plaintiff would remain free to pursue other civil remedies under diversity jurisdiction.

### III. Conclusion and Order

Accordingly, **IT IS ORDERED**:

1. Plaintiff shall file a memorandum, not to exceed ten (10) pages, to further explain why admiralty jurisdiction exists on or before **March 17, 2020**. In lieu of said memorandum, Plaintiff may withdraw the pending motion seeking the arrest of cargo;

2. Following the filing of Plaintiff's memorandum, the Court will promptly address the underlying Rule C motion for the arrest of cargo.

                                       *s/ Stephanie K. Bowman*
                                       Stephanie K. Bowman
                                       United States Magistrate Judge